Filed 6/17/14  Marriage of Melnichuk and Yegorov CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of NELYA MELNICHUK and DMITRIY YEGOROV. | |
| NELYA MELNICHUK,  Respondent,  v.  DMITRIY YEGOROV,  Appellant. | C072580  (Super. Ct. Nos. 03DV03371, 04FL000784) |

Dmitriy Yegorov appeals from the trial court's order renewing a domestic violence restraining order against him, arguing reversal is necessary because the trial court relied on incompetent, false, or otherwise incredible witnesses.  Nelya Melnichuk, petitioner in the trial court, responds that Yegorov's challenges to the competency of certain witnesses who testified on Melnichuk's behalf at the trial on her petition are waived by his failure to raise these challenges to the witnesses at trial, and Yegorov has failed to show the trial court abused its discretion in issuing the restraining order.  We

1

reject Yegorov's challenges to the competency and credibility of the witnesses because he failed to raise these challenges in the trial court. We also reject Yegorov's assertion the trial court abused its discretion by not admitting the 20 declarations of neighbors in support of his opposition to the petition. Accordingly, we affirm the court's order.

BACKGROUND

Yegorov and Melnichuk were previously married and, at the time of trial, had two teenage children.

Melnichuk obtained a Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.)[1] restraining order against Yegorov in October 2003 after he pushed her so hard she flew across the room and into a piece of furniture. In December 2006 after Yegorov violated the restraining order, it was renewed for five years.

In December 2011 after Yegorov moved into the apartment complex where Melnichuk lived with their children, Melnichuk brought the instant petition to renew the restraining order on the grounds Yegorov had violated the order by living within 100 yards of her, and continued to harass, stalk, and intimidate her by chasing her within the complex, cursing and yelling at her, eavesdropping at her door, and watching her apartment at all hours. Yegorov opposed the request, denying Melnichuk's allegations and stating he moved into Melnichuk's apartment complex so he could see their children "even if it is from afar" because Melnichuk has refused to respond to his efforts to coordinate his supervised visitation. The trial court imposed a permanent order restraining Yegorov from contacting or harassing Melnichuk and their children and ordering him to move from the apartment complex. Yegorov did not move from the complex, but moved for reconsideration on the grounds the parties' respective apartments

---

[1]    Undesignated statutory references are to the Family Code.

were more than 100 yards apart. Yegorov's motion for reconsideration was granted, the restraining order was stayed, and the matter set for trial.

At trial, Melnichuk testified she and the children moved into her current apartment in October 2010. Yegorov moved into the complex in June 2011. Thereafter, Melnichuk encountered Yegorov at various locations around the complex such as by the mailbox, by the laundry room closest to her apartment, and while walking inside the complex. Yegorov yelled or shouted at Melnichuk in an aggressive way, calling her a prostitute, bitch, whore, and other slurs, and frightening her. Other times Yegorov approached her and stated he wants to see the children. He eavesdropped outside her door. Melnichuk believed Yegorov's apartment is within 100 yards of hers and, in any event, the mailbox, the manager's apartment, and the main entrance to the complex are within 100 yards of his apartment. Since Yegorov moved into the complex, he continually follows her and the children and they are all afraid.

Yelena Moskalenko, a neighbor, has known Melnichuk for 10 years. Moskalenko testified Melnichuk's demeanor has changed since Yegorov came to live in the apartment complex. Melnichuk reports she cannot sleep; she cries and is nervous all the time. Melnichuk trembled when she reported Yegorov had moved into the apartment complex and she ran to Moskalenko in tears when Yegorov chased and cursed at her. Moskalenko testified she usually sees Yegorov "in the middle of the apartments" near where the laundry room, the mailboxes, and the playground are located. Moskalenko has seen Yegorov with his ear pressed against Melnichuk's door.

Leonida Buchkovskaya, another neighbor, testified she saw Yegorov running after Melnichuk near the laundry, cursing her. Melnichuk seemed like a "frightened, little animal." When Yegorov returned, he started yelling at Buchkovskaya, saying, "I'm going to kill you all."

Yegorov testified he lives with his mother in the same apartment complex as Melnichuk. He has measured the distance between the parties' apartments and states it is

119 yards. Melnichuk can come and go from her apartment without coming within 100 yards of his if she uses her friends' parking spaces. Yegorov testified he never runs or yells, has never used the apartment laundry room or picked up his mail, and has never had any face-to-face conversations with Melnichuk since moving to the complex. He denied chasing Melnichuk near the mailboxes and the apartment laundry.

Yegorov's mother testified neither she nor Yegorov socialize with others at the apartment complex.

Galina Ganzyuk, a neighbor, testified on Yegorov's behalf that she has never seen him near either the laundry room or in the open areas at the complex. She also testified Melnichuk once said she wanted to reconcile with Yegorov. On rebuttal, Melnichuk denied ever speaking to Ganzyuk about Yegorov, and denied telling Ganzyuk she wanted to reconcile with Yegorov.

The trial court granted Melnichuk's motion for renewal of the restraining order, and made the order permanent. "It is apparent from the testimony developed at trial that [Yegorov] is fixated on [Melnichuk], and is intent on controlling her environment. He requires psychotherapeutic intervention." The court found Melnichuk lives in a state of fear, and Yegorov has intentionally or recklessly caused Melnichuk bodily injury, has intentionally or recklessly attempted to cause her bodily injury, and has placed her in reasonable apprehension of imminent serious bodily injury. Yegorov has engaged in threatening and harassing conduct towards Melnichuk and his conduct involves such "a lack of prudential restraint, a lack of insight, and a lack of equanimity" that, without a restraining order, Melnichuk's safety "is credibly jeopardized."

DISCUSSION

Section 6345 provides in relevant part that a trial court may renew a restraining order "upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to

4

termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party." (§ 6345, subd. (a).)

When contested, a request to renew a restraining order should be granted if the protected party "entertains a 'reasonable apprehension' of future abuse. . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).) "Abuse" does not have to involve physical violence. It is statutorily defined as including "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§§ 6320, subd. (a), 6203, subd. (d).)

In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie, supra*, 115 Cal.App.4th at p. 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid.*) The court may also consider the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities. (*Ibid.*)

"[T]he physical security of the protected party trumps all of these burdens the original or renewed protective order may impose on the restrained party. Thus, where the

5

protected party has a 'reasonable apprehension' of future physical abuse if the current protected order expires, that order should be renewed despite any burdens this inflicts on the restrained party." (*Ritchie, supra*, 115 Cal.App.4th at p. 1292.)  A defendant's conduct can place a victim in reasonable fear of serious bodily injury without involving any violence.  (*Id.* at p. 1299; see *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 331-333.)

In challenging a renewal order, the restrained party is not permitted "to challenge the truth of the evidence and findings underlying the initial order."  (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.)  We review the trial court's ruling under an abuse of discretion standard to determine " 'whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' "  (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; see *Lister v. Bowen, supra*, 215 Cal.App.4th at p. 333.)

Yegorov's lack of legal counsel does not entitle him to special treatment on appeal, as a pro se litigant is held to the same restrictive rules of procedure as an attorney.  (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.)

With these principles in mind, we turn to Yegorov's contentions on appeal.

Yegorov devotes a significant portion of his brief on appeal to challenging the truth of the evidence on which the original temporary restraining order issued, disputing the circumstances under which Melnichuk was granted custody of the children in the divorce proceedings, challenging the truth of the evidence on which the restraining order was renewed in 2006, and complaining he was unable to arrange or schedule the supervised visitation he was allowed.  These matters are not properly before us and we cannot consider them on appeal. (Cf. *Ritchie, supra*, 115 Cal.App.4th at p. 1290.)

As to the court's order renewing the existing restraining order, Yegorov contends Melnichuk's application "was not based on anything real, or factual, but based totally on false and unsubstantiated allegations" proffered by Melnichuk "and her 'gang' of

6

perjurers and frauds." He contends the witnesses were incompetent, false, or otherwise incredible.

Yegorov claims witness Moskalenko has a mental disability that renders her testimony in support of Melnichuk's petition incompetent, but nothing in the record suggests he ever challenged Moskalenko's competency. Because Yegorov failed to seek a hearing on Moskalenko's competence, and made no objection or motion relevant to this contention, he has waived the claim. (See *People v. Freeman* (1994) 8 Cal.4th 450, 488.)

Nor are we persuaded by Yegorov's claim on appeal that Moskalenko lacked credibility. Not only did he decline at trial to cross-examine her, but in a bench trial the trial judge is the ultimate arbiter of fact as he or she was privy to the testimony of all parties and witnesses. Given the court's findings the evidence showed Yegorov has engaged in threatening and harassing conduct towards Melnichuk and has so placed her in reasonable apprehension of imminent serious bodily injury that the issuance of a permanent restraining order in Melnichuk's favor is necessary, we presume the court found the evidence supporting Melnichuk's claims more credible than defendant's denials, and we must defer on appeal to the trial court's implicit determinations of credibility. (*Lenk v. Total-Western, Inc*. (2001) 89 Cal.App.4th 959, 968.) For the same reasons, we reject Yegorov's challenge to the credibility of witness Buchkovskaya.

Finally, we reject Yegorov's assertion the trial court abused its discretion in refusing to accept the "facts and evidence" contained in "20 declarations of [Yegorov's] neighbors" in support of his opposition to Melnichuk's petition to renew the restraining order. Our review of the declarations attached by Yegorov as exhibits to his appellant's brief shows most bear no stamp showing they were ever filed or lodged in the trial court, and the few that bear any stamp show only that they were received in the family court drop box. The authors of those declarations were not offered as witnesses at the hearing. Under these circumstances, we cannot agree the trial court abused its discretion in failing to accept the contents of these unfiled declarations at face value, as Yegorov suggests.

## DISPOSITION

The court's order is affirmed.  Nelya Melnichuk is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


     HOCH    , J.


We concur:


     HULL    , Acting P. J.


     ROBIE    , J.